In the Matter of the Petition of U.M. and S.M., Petitioners,

v.

DISTRICT COURT In and For the COUNTY OF LARIMER and the Honorable J. Robert Miller, a Judge of the said Court, Respondents.

No. 81SA169.

Supreme Court of Colorado, En Banc.

July 13, 1981.

Kochenburger & Smith, John E. Kochenburger, Fort Collins, for petitioners.

Norton Frickey and Associates, Norton Frickey, Denver, for respondents.

LOHR, Justice.

In this original proceeding under C.A.R. 21, the petitioners (a mother, S.M., and her child, U.M.) seek to prohibit the Larimer County District Court from changing the venue of their action under the Uniform Parentage Act[1] from Larimer County to the City and County of Denver. We issued a rule to show cause why the change of venue should not be prohibited; we now make that rule absolute.

The petitioners bought an action in Larimer County District Court pursuant to the Uniform Parentage Act, seeking to establish that T.R. is the father of the child, U.M. T.R. moved for a change of venue to the City and County of Denver. At the hearing on that motion, the parties stipulated that T.R. was served with process in Denver, and that the mother and child were then resi-

1. Sections 19–6–101 et seq., C.R.S. 1973 (1978 Repl. Vol. 8) (1980 Supp.).

dents of Larimer County and were physically present in Larimer County. The verified motion for change of venue states that T.R. resides in Denver; the petitioners have not disputed that statement. At the conclusion of the hearing, the trial judge stated that he had read section 19–6–109, C.R.S. 1973 (1978 Repl. Vol. 8) (1980 Supp.), and C.R.C.P. 98, and, without further explanation, ordered that the motion for change of venue from Larimer County to Denver be granted. The petitioners then brought this original proceeding to prevent the implementation of that order.

The respondent argues that, although the action was properly *brought* in Larimer County, T.R. had a right to require that it be *tried* in Denver. An examination of the relevant provisions of the statutes and rules of procedure is necessary to an understanding of the respondent's position.

The Uniform Parentage Act contains the following provision in section 19–6–109(3):

"The action may be brought in the county in which the child or the alleged father resides or is found or, if the father is deceased, in which proceedings for probate of his estate have been or could be commenced." [2]

It also provides that "[a]n action under this article is a civil action governed by the Colorado Rules of Juvenile Procedure." Section 19–6–115, C.R.S. 1973 (1978 Repl. Vol. 8) (1980 Supp.).

The Colorado Rules of Juvenile Procedure contain no venue provisions. However, C.R.J.P. 1 provides, in pertinent part:

"These rules govern proceedings brought in the juvenile court under Title 19,

C.R.S. 1973, as amended, also hereinafter referred to as the Children's Code, . . . Proceedings are civil and where not governed by these rules or the procedures set forth in Title 19, C.R.S. 1973, as amended, shall be conducted according to Colorado Rules of Civil Procedure."

The subject of venue is addressed in the Colorado Rules of Civil Procedure. The respondent relies on C.R.C.P. 98(c), the relevant portion of which states:

"Except as provided in [certain provisions of the rule not applicable here] . . . an action shall be tried in the county in which the defendants, or any of them, may reside at the commencement of the action . . ."

The respondent reasons that section 19–6–109(3) prescribes where an action under the Uniform Parentage Act may be *brought* but is silent as to where it is to be *tried.* Section 19–6–115 then refers us to the Colorado Rules of Juvenile Procedure for guidance. C.R.J.P. in turn directs us to the Colorado Rules of Civil Procedure because of the absence of any venue provisions in the juvenile rules. The respondent argues that our tour of the relevant statutes and rules comes to journey's end at C.R.C.P. 98(c), which prescribes the place of *trial* as Denver, the county of T.R.'s residence and the place where he was served with process. The respondent's argument, though ingenious, is unpersuasive.

The foundation upon which the respondent's position is built is the proposition that section 19–6–109(3) is silent as to the appropriate place for trial, so that resort to procedural rules is necessary to ascertain

---

**2.** The Uniform Parentage Act is part of the Colorado Children's Code, which comprises all of Title 19, C.R.S. 1973. Section 19–1–101 et seq., C.R.S. 1973 (1978 Repl. Vol. 8). The general provisions of the Colorado Children's Code contain a venue section consistent with section 19–6–109(3), C.R.S. 1973. Section 19–1–105(6), C.R.S. 1973 (1978 Repl. Vol. 8) provides:

"In proceedings brought under section 19–1–104(1) . . . (g) [to determine the parentage of a child and to make an order of support in connection therewith], the petition may be filed in the county where the child is physi-

cally present, or the county where the child resides, or the county where the respondent is physically present, or the county where the respondent resides."

The reason for the duplication appears to be historical. Prior to 1977, paternity proceedings were governed by Article 6 of Title 19, C.R.S. 1973, which in its then-existing form contained no venue provision. By Colo. Sess. Laws 1977, ch. 245, 19–6–101 *et seq.* at 1010, the Uniform Parentage Act was adopted. Although the former Article 6 of Title 19 was repealed thereby, the venue provision in section 19–1–105(6) was not explicitly repealed.

where a paternity proceeding is to be tried. We find that proposition to be incorrect.

Some familiar guides to statutory construction are relevant and bear repeating. It is fundamental that legislative intent must be ascertained, and given effect if possible. *E.g., Alvarez v. District Court,* 186 Colo. 37, 525 P.2d 1131 (1974). We must be mindful that "[a]ll general provisions, terms, phrases, and expressions, used in any statute, shall be liberally construed, in order that the true intent and meaning of the General Assembly may be fully carried out." Section 2–4–212, C.R.S. 1973 (1980 Repl. Vol. 1B). In enacting a statute, it is presumed that "[a] just and reasonable result is intended." Section 2–4–201(1)(c), C.R.S. 1973 (1980 Repl. Vol. 1B). If a statute is ambiguous, relevant considerations in arriving at the correct construction include the object sought to be attained and the consequences of a particular construction. Section 2–4–203(1)(a) and (e), C.R.S. 1973 (1980 Repl. Vol. 1B); *see Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976). We undertake our task of statutory construction with these principles in mind.

The heading of section 19–6–109 is "Jurisdiction-venue," the same heading found in the relevant section of the uniform act from which our statute is derived. *See* 9A Uniform Laws Annotated 597–98 (Master Ed. 1979). This heading is part of the statute as adopted by the General Assembly. Colo.Sess.Laws 1977, ch. 245, 19–6–109 at 1013. Although where headings are added by the revisor of statutes "no implication or presumption of a legislative construction is to be drawn therefrom," section 2–5–113(4), C.R.S. 1973 (1980 Repl. Vol. 1B), we properly can use a legislatively selected heading as an aid in construing a statute. *Conrad v. City of Thornton,* 191 Colo. 444, 553 P.2d 822 (1976); *Davis v. Conour,* 178

Colo. 376, 497 P.2d 1015 (1972). Section 19–6–109 consists of three subsections; the first two explicitly treat jurisdiction. It follows that the "venue" portion of the statutory heading was intended to apply to subsection (3). This is consistent with the commissioners' comment to section 8 of the uniform act (the counterpart of section 19–6–109) characterizing subsection (3) as a "venue provision." 9A Uniform Laws Annotated 598 (Master Ed. 1979).

*Black's Law Dictionary* 1727 (Rev. 4th ed. 1968) defines "venue" as "... the county (or geographical division) in which an action or prosecution is *brought for trial,* and which is to furnish the panel of jurors. (Citations omitted.) It relates only to [the] place where or [the] territory within which either party may require [the] case to be tried." (citation omitted) (emphasis added). Similar definitions are to be found in 1 *W. Barron and A. Holtzoff, Federal Practice and Procedure* § 71 (C. Wright Rev. 1960); 77 *Am.Jur.2d Venue* § 1 (1975).

Had the General Assembly intended to prescribe that a specifically authorized location for bringing an action would not be the place where the action should be tried, it easily could have said so explicitly. That it did not do so is indicative that such was not the legislative intent. We can perceive no reasonable basis for expressly authorizing a paternity proceeding to be brought in one location but requiring that it be tried in another should the defendant object. We conclude that section 19–6–109(3) is a venue statute and that the term "brought" as used therein was intended to mean "brought for trial," as in *Black's Law Dictionary's* definition of venue. This construction will promote efficiency in litigation, will achieve a just and reasonable result and will carry out what we perceive to be the true intent and meaning of the General Assembly.[3]

---

**3.** We are aware of decisions under prior law on other subjects which have construed statutes somewhat similar to section 19–6–109(3) as designating the courts which are granted subject matter jurisdiction for the commencement of an action, with the result that *venue* for trial was left to be controlled by the procedural code. *See People ex rel. Bear Creek Development Corp. v. District Court,* 78 Colo. 526, 242 P. 997 (1926); *People ex rel. Lackey v. District Court,* 30 Colo. 123, 69 P. 597 (1902). As those cases recognize, the question is ultimately one

As so construed, section 19–6–109(3) completely prescribes the places where the parties may require the case to be tried. That statute prevails over any conflicting provisions in the Colorado Rules of Civil Procedure. C.R.J.P. 1; C.R.C.P. 81. The petitioners selected Larimer County, which is a proper venue under section 19–6–109(3) because the child resides there. Even though Denver is also a proper venue under that section because T.R. resides there, the petitioners have the right to select from among the authorized venues the place where the action is to be brought for trial.[4] *See, e.g., Progressive Mutual Insurance Co. v. Mihoover*, 87 Colo. 64, 284 P. 1025 (1930).

As Larimer County is a proper place for the trial of this action, the order for change of venue was contrary to law.

The rule is made absolute.

LEE, J., does not participate.

---

of statutory construction. Here, we are persuaded that section 19–6–109(3) was intended by the legislature to be a venue statute, not a statute designating the courts which are to have subject matter jurisdiction for commencement of paternity actions. *See generally People ex rel. Cruz v. Morley*, 77 Colo. 25, 234 P. 178 (1925). This construction also avoids any possible conflict between the statute and the constitutional provision prescribing the jurisdiction of district courts, an issue which has not been raised by the parties. *See Colo. Const.* Art. VI, § 9.

4. · The only ground for change of venue treated by section 19–6–109(3) is the bringing of paternity proceedings in a court in which venue is not properly placed under that statute. C.R. C.P. 98 may be applicable to other grounds for change of venue in paternity proceedings, *e.g.*, when the convenience of witnesses and the ends of justice would be promoted by the change. *See* C.R.C.P. 98(f) to (j). No such other grounds are asserted by the respondents.